**MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION**

SUFFOLK, SS:

In Re:   Mary Newell
         v. : Celadon Security Services Inc.
         Docket No. 05-31-2001

## AFFIDAVIT OF RODNEY BUTLER

I, Rodney Butler, do depose and say as follows:

1.   My name is Rodney Butler and I am over the age of 18 and believe in the obligations of an oath. I have worked for Celadon Security Services Inc. for approximately 1 1/2 years as an Account Manager.

2.   I make this affidavit on personal knowledge of the facts contained herein.

3.   Mary Newell worked for me part time from December of 2000 until she voluntarily resigned on May 18, 2001.

4.   In accordance with Celadon practice, Ms. Newell was trained and then worked at several different client sites during her employ with Celadon.

5.   The last two sites I assigned her to were One Kendall Square Office Building in Cambridge and at the Seaport Condominiums (a first class Condominium) located at Marina Bay in Quincy.

6.   The relevant scheduling records reveal that Ms. Newell was assigned to provide security guard services at One Kendall Square beginning on April 30, 2001 and that her shift ran from 4 p.m. to 12 a.m. As a security guard at this location she was required to provide access-egress control. Her responsibilities did not require her to nor was she supposed to be taking a tour of the premises. The fact that she left her post was in direct violation of her job responsibilities. The Celadon scheduling records reveal that the only day that Ms. Newell and the alleged "foreign employee", Abedekader Kouidri were both working at One Kendall Place at the same time was on Monday, April 30, 2001. Contrary to Ms. Newell's allegations, Mr. Kouidri was not her "supervisor". Mr. Kouidri was also a security guard employed by Celadon with responsibilities comparable to those of hers. More importantly, Mr. Kouidri was never authorized to nor, to the best of my knowledge, did he ever give Ms. Newell orders.

7.  I believe the alleged incident apparently took place on Monday, April 30, 2001. On Monday, May 7, 2001, I received a Disciplinary Action Report describing what Frank Doran had been told by Ms. Newell. Upon receiving the Disciplinary Action Report, I telephoned Ms. Newell to discuss the complaint. During the telephone conversation with Ms. Newell, she told me about the alleged incident that had transpired on Monday, April 30, 2001 with another security officer assigned to One Kendall Square. She complained that another security officer, Abedekader Kouidri, had "brushed up against her while on tour of the premises". I asked her why she had waited so long to report the incident and she replied that a similar incident had happened to her while she was employed at Stop & Shop and that no action was taken by Stop & Shop. She also stated that she thought Celadon should be aware of the incident. As soon as I completed this telephone conversation with Ms. Newell, I reported the incident to Steven Zuchowski, who is the Vice President of Celadon and responsible for handling all employment matters. Mr. Zuchowski asked me to contact Ms. Newell immediately and arrange a meeting either the same day or the next day to formally inquire into and investigate the allegation. I contacted Ms. Newell and scheduled a meeting between the three of us for the next day. However, Ms. Newell did not show up for the meeting. As a result of her failure to show up, I paged her at least three times in order to inquire as to why she had failed to show up for the meeting. However, she failed to return my calls and never rescheduled the meeting.

8.  At the time when Ms. Newell reported the incident to me, Mr. Kouidri was on vacation and therefore, we had planned to meet with him upon his return from vacation to discuss the incident. However, instead of returning from vacation, he picked up his last paycheck and resigned from Celadon. Therefore, we never had the opportunity to confer with him about the incident.

9.  As an accommodation to Ms. Newell, I gave her a written schedule, which she agreed to and which reassigned her to a site that she had previously worked, the Seaport Condominium at Marina Point in Quincy. Ms Newell was assigned to the Tuesday through Friday shift, which included the Friday into Saturday 5 pm to 1 am shift. Since there was no public transportation available, we assigned a supervisor to pick her up prior to the end of her shift. On Saturday, May 12, 2001, the supervisor, Keith Green, drove to Seaport Condominium to pick her up at 12:40 am, approximately 20 minutes prior to the end of each shift. Mr. Green had previously picked her up prior to the end of her scheduled shift while she was at this location. However, on the night in question, Ms. Newell had already left the site when he arrived. Her conduct in leaving the site early was in direct violation of Celadon policy. On the following Monday morning, May 14, I read the Celadon dispatch log and contacted Ms. Newell to inquire as to why she had left her post early in direct violation of Celadon policy. She informed me that she wanted to resign. I asked her to come to Celadon's office in Boston so that I could talk to her about her resignation and conduct an exit interview which was standard Celadon policy. Ms. Newell came to Celadon's office on May 18, 2001 and met with me. She filled out and signed the Separation Form which is referenced in the Position Statement. On the Separation Form she stated in front of me that she

2

that she voluntarily resigned and had no claims against me or the company. Ms. Newell was not terminated from her employment with Celadon.

SUBSCRIBED TO AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS 20th DAY OF JULY, 2001

_Rodney Butler_
Rodney Butler
F:\3687\Pleadings\AffidavitRodneyButler.doc