

# MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

## SEXUAL HARASSMENT IN THE WORKPLACE GUIDELINES

Dorca I. Gomez, Chairwoman
Cynthia A. Tucker, Commissioner
Walter J. Sullivan, Jr., Commissioner
*Massachusetts Commission Against Discrimination,*
*Commonwealth of Massachusetts*
October 2, 2002

## I.  INTRODUCTION[1]

Massachusetts Law prohibits sex discrimination in the workplace.[2] Sexual harassment is a form of sex discrimination. Sexual harassment is also prohibited in places of public accommodation,[3] educational facilities[4] and housing.[5] These guidelines address sexual harassment in the workplace only.

The standards governing the prohibition of sex discrimination and sexual harassment in the workplace are set forth in Massachusetts General Laws chapter 151B ("chapter 151B"). The Massachusetts Commission Against Discrimination ("MCAD" or the "Commission") issues these guidelines to assist employers, employees, attorneys and the general public in understanding what constitutes sexual harassment, as well as to explain what employees and employers should do to prevent, stop and appropriately respond to sexual harassment. In addition, these guidelines discuss the circumstances under which employers[6] and individuals may be held liable for sexual harassment in the workplace.

## II.  SEXUAL HARASSMENT
### A.  Generally

There are two types of sexual harassment: *"quid pro quo"* harassment and "hostile work environment" harassment. They may occur independently or concurrently.

### B.  *Quid Pro Quo* Harassment

Chapter 151B defines "quid pro quo" sexual harassment as:

sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions.......[7]

To prove a claim for quid pro quo harassment, the employee must establish the following elements:

1.  That the alleged harasser made sexual advances or sexual requests, or otherwise engaged in conduct of a sexual nature;
2.  the sexual conduct was unwelcome;
3.  he or she rejected such advances, requests or conduct; and
4.  the terms or conditions of his or her employment were then adversely affected.[8]

or

1.  That the alleged harasser made sexual advances or sexual requests, or otherwise engaged in conduct of

**EXHIBIT**

A

    a sexual nature;

2. the sexual conduct was unwelcome;
3. he or she submitted to such advances, requests or conduct; and
4. when he or she submitted to the unwelcome sexual conduct, he or she did so in reasonable fear of adverse employment action.[9]

*Quid pro quo* harassment occurs when an employee with authority or control over the terms and conditions of another employee's employment offers her[10] a work benefit or advantage in exchange for sexual favors or gratification.[11] Conversely, if an employee is denied a work benefit or advantage due to her refusal to respond to, or rejection of, requests for sexual favors or gratification, she is subjected to *quid pro quo* harassment. Thus, either submission to, or rejection of, unwelcome sexual advances may result in *quid pro quo* harassment if the terms or conditions of one's employment are impacted.[12] Examples of such impact may include but are not limited to: termination; demotion; denial of promotion; transfer; alteration of duties, hours or compensation; or unjustified performance reviews. [13]

Once the complainant establishes a prima facie case, the burden of production, as opposed to the burden of proof, shifts to the respondent to articulate a legitimate, non-discriminatory reason for the adverse employment action taken, supported by credible evidence.[14] If the respondent meets its burden of production, the complainant must prove that the reasons offered by the respondent were not its true reasons, but were a pretext for discrimination.[15] For example, a complainant may meet her initial burden by showing that she was fired soon after she turned down her supervisor's request for a date. The request for a date would constitute the unwelcome advance. If there is sufficient closeness in time between the complainant's rejection of her supervisor's request and her firing, this may create an inference of causation.[16] The employer would then have to articulate a legitimate non-discriminatory reason for its adverse action supported by credible evidence. For example, if the respondent credibly asserts that the complainant was terminated for poor job performance, the burden remains with the complainant to prove, by a preponderance of the evidence, that the respondent's conduct was motivated by her rejection of her supervisor's advance.[17] This may be done by proving that the respondent's articulated reason is false. [18]

C. **Hostile Work Environment**[19]

Chapter 151B defines "hostile work environment" harassment as:

sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment.[20]

In a hostile work environment case, the complainant must prove:

1. she was subjected to conduct of a sexual nature;
2. the conduct of a sexual nature was unwelcome;
3. the conduct of a sexual nature had the purpose or effect of creating an intimidating, hostile, humiliating or sexually offensive work environment; and
4. the conduct unreasonably interfered with complainant's work performance or altered the terms and conditions of the complainant's employment.[21]

1. **Conduct of a Sexual Nature**

Examples of conduct that might create a hostile work environment include: inappropriate touching; sexual epithets, jokes, gossip, sexual conduct or comments; requests for sex; displaying sexually suggestive pictures and objects; and leering, whistling, or sexual gestures. [22] Harassing conduct need not be motivated by sexual desire in order to constitute sexual harassment.[23]

2. **Welcomeness**

The law does not proscribe all conduct of a sexual nature. Only unsolicited and unwelcome conduct may create a hostile work environment. When the employee initiates conduct of a sexual nature or is a

willing participant in a sexually charged environment, she may not be the victim of sexual harassment. Whether the conduct was "welcome" does not turn on whether the complainant's behavior was "voluntary." When an employee only submits to harassing behavior to avoid being targeted further, to cope in a hostile environment, or because participation is made an implicit condition of employment, she is not considered to have welcomed the conduct.[24] The employee's rejection of, or failure to respond positively to, suggestive comments or gestures may demonstrate unwelcomeness. The fact that the employee may have infrequently joked with the alleged harasser does not demonstrate that the alleged harasser's entire course of conduct was welcome.[25] An employee need not communicate her objection to harassing conduct to demonstrate its unwelcomeness. [26]

3. **Conduct Creating a Hostile Work Environment**

In order to rise to the level of creating a hostile work environment, the conduct must be hostile, intimidating, humiliating or offensive both from an objective and a subjective perspective.[27] An employee who does not subjectively perceive the behavior at issue as hostile, intimidating, humiliating or offensive is not a victim of sexual harassment within the meaning of the law, even if other reasonable individuals would consider such behavior to be so.[28] On the other hand, an employee who subjectively finds behavior to be hostile, intimidating, humiliating or offensive when it is not objectively so, is not a victim of a hostile work environment under chapter 151B. Thus, for example, if a female employee is faced with requests for sexual favors, the question becomes whether a reasonable person in her position would find the conduct offensive and whether she actually found the conduct offensive.[29]

In determining whether conduct is objectively offensive, the Commission looks to whether the conduct is severe or pervasive. In order for conduct to be considered pervasive, a complainant must prove that she was subjected to "a steady barrage of opprobrious [sexual] comment or abusive treatment."[30] Such treatment can involve a combination of physical and verbal conduct, e.g., unwanted groping or touching combined with profanity or sexual innuendo. Sexual harassment experienced by others in the workplace may also be relevant to the assessment of the conduct's pervasiveness.[31]

In some circumstances, a hostile environment may be established based on a single incident, due to its severity, despite the fact that the conduct is not frequent or repetitive.[32] Moreover, purely verbal conduct, without a physical component, may be severe or pervasive enough to create a hostile work environment. However, minor, isolated conduct does not constitute sexual harassment.[33] "A few isolated remarks over a period of time" are generally insufficient to meet the pervasiveness standard.[34] Chapter 151B is not a clean language statute and does not prohibit all use of profane or offensive language.[35]

4. **Conduct that Interferes with an Individual's Ability to Perform Her Job**

Proof of a hostile work environment claim requires a showing that the unwelcome sexual conduct created an impediment to an employee's full participation in the workplace, altered the terms and conditions of her employment, or unreasonably interfered with her work performance.[36] While not all offensive or inappropriate conduct will create such an impediment,[37] one's working conditions may be altered without a showing of a tangible job detriment.[38] Thus, an employee may seek recovery for hostile environment sexual harassment even if she has not suffered an adverse job action such as termination, suspension, or demotion.[39]

Whether conduct interferes with an individual's ability to perform her job is essentially a question of fact based on the totality of the circumstances, which include the nature, severity and pervasiveness of the conduct and the psychological harm to the employee. Conduct that interferes with an employee's ability to do her job need not necessarily cause severe psychological harm or emotional distress to be actionable.[40]

D. **Same-Sex Sexual Harassment**

Sexual harassment can occur between individuals of the same gender. The same standards that apply to sexual

harassment between individuals of the opposite sex apply to harassment cases involving individuals of the same sex. [41] Under a same-sex sexual harassment claim, the sexual orientations of the parties are irrelevant, as the harassing conduct need not be motivated by sexual desire to be actionable. [42] In addition, there is no requirement under chapter 151B that a complainant prove the conduct was motivated by his or her gender. [43]

E.   **Sexual Harassment Outside of the Workplace**

Chapter 151B may apply to harassment that occurs between co-workers that takes place outside the workplace. When the conduct complained of occurs outside of the workplace, the Commission may consider the following factors in assessing whether the conduct constitutes sexual harassment:

- whether the event at which the conduct occurred is linked to the workplace in any way, such as at an employer-sponsored function; [44]
- whether the conduct occurred during work hours; [45]
- the severity of the alleged outside-of-work conduct;
- the work relationship of the complainant and alleged harasser, which includes whether the alleged harasser is a supervisor and whether the alleged harasser and complainant come into contact with one another on the job; [46]
- whether the conduct adversely affected the terms and conditions of the complainant's employment or impacted the complainant's work environment. [47]

III.   **EMPLOYER LIABILITY**

A.   **Generally**

Sections 4(1) and 4(16A) of chapter 151B provide the statutory basis for employer liability in cases of sexual harassment. Section 4(1) states in relevant part:

It shall be an unlawful practice:

1.   For an employer, by himself or his agent, because of the ... sex of any individual to ... discriminate against such individual in compensation or in terms, conditions or privileges of employment.

******

Section 4(16A) states:

It shall be an unlawful practice:

16A. For an employer, personally or through its agents, to sexually harass any employee.

******

B.   **Employers are Liable for Harassment by Persons with Supervisory Authority**

An employer is liable for the sexual harassment of employees by managers and persons with supervisory authority, regardless of whether the employer knows of the conduct. [48] Because Massachusetts courts have determined that the Legislature intended that an employer be liable for discrimination committed by those on whom it confers authority, the courts have adopted the theory of vicarious liability in harassment cases. [49] An employer is liable for the actions of its managers and supervisors because they are conferred with substantial authority over subordinates and are thus considered agents of the employer. [50] In some circumstances, an employer may be liable for the actions of a supervisor, even if that supervisor does not have direct supervisory authority over the Complainant. [51]

Factors the Commission will consider as indications of supervisory authority include, but are not limited to

- Undertaking or recommending tangible employment decisions affecting an employee;
- Directing activities, assigning work and controlling work flow;

- Hiring, firing, promoting, demoting or disciplining;
- Altering or affecting an employee's compensation or benefits;
- Evaluating an employee's work load;
- Distributing necessary supplies and tools;
- Giving directions and verifying and fixing mistakes;
- Assisting employees in assigning tasks; and
- Monitoring and evaluating work performance.[52]

The employer may be vicariously liable for sexual harassment even if the alleged harasser is not formally designated as a supervisor and even if a supervisor lacks actual authority, under the doctrine of apparent authority. [53]Liability under these circumstances exists when the harasser holds himself out to the employee as having supervisory authority over the employee.[54] The employee's belief that the harasser has authority over her, to the extent that it is reasonable, may be a significant factor in determining the existence of apparent authority.[55]

## C.  Employer Is Liable for Sexual Harassment in Other Circumstances

An employer may also be liable for sexual harassment committed by persons without actual or apparent supervisory authority, such as co workers.[56]The complainant must show that the employer either knew[57]or should have known [58]about the harassing conduct and failed to take prompt, effective and reasonable remedial action. [59]The respondent's obligation to take remedial action is discussed in greater detail in § VI(F), *infra*.

An employer may also be liable for the sexual harassment of its employees by certain non-employees, such as customers, [60]patients,[61]clients, [62] independent contractors or other acquaintances. [63]An employer may be held liable for the unlawful conduct of such non-employees when the employer knew or should have known about the conduct and failed to take prompt, effective and reasonable remedial action. The primary difference between employer liability for harassment perpetrated by co-workers and harassment committed by non-employees lies in the ability of the employer to control the conduct of the non-employees. The greater the employer's ability to control the non-employee's conduct, the more likely it will be found liable for that person's unlawful harassment. [64]

## IV.  INDIVIDUAL LIABILITY FOR SEXUAL HARASSMENT

An individual may be held liable for sexual harassment as an employer under M.G.L. c. 151B, § 4(1) and § 4(16A), or under M.G.L. c.151B, §§ 4(4A) and 4(5), which specifically prohibit "any person" from engaging in certain types of discriminatory conduct.[65]

## A.  Individuals May Be Liable as the Employer

When an individual is the employer, rather than merely an agent of the employer, the individual may be liable under chapter 151B, § 4(1) and § 4(16A), which prohibit unlawful sexual harassment on the part of an employer. Depending on the size, nature and form of the business, an individual may be so closely identified with the business entity that the individual is personally liable as the employer.[66]This may apply to principals, owners, presidents or partners in a business.[67]

## B.  Individuals May Be Liable Under Chapter 151B, § 4(4A)

Chapter 151B, § 4(4A) states that it is an unlawful practice:

for *any person* to coerce, intimidate, threaten or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter.(emphasis supplied).

Individuals may be subject to liability under § 4(4A) for engaging in sexually harassing conduct.[68] Both supervisors and co-workers may be liable under this section for engaging in sexually harassing conduct. [69]Furthermore, the Commission has held that an individual may be liable even in circumstances where the employer is not subject to liability. [70]Section 4(4A) even reaches the conduct of a third party, non-employee

who sexually harasses an employee.[71]

C. **Individuals May Be Liable Under Chapter 151B, § 4(5) ("Aiding and Abetting" Liability)**

Chapter 151B, § 4(5) states that it is an unlawful practice:

> for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.

Under the language of § 4(5), any individual - including employees of respondents and third parties - who actively perpetrates or assists another in acts prohibited by chapter 151B can be held separately liable as an aider and abettor.[72] The tripartite standard for determining "aider and abettor" liability is:

- The wrongful act must be separate and distinct from the underlying claim or an act in furtherance of the underlying claim;
- The aider and abettor shared an intent to discriminate not unlike that of the alleged principal offender; and
- The aider and abettor knew of his or her supporting role in an enterprise that deprived an individual of a right guaranteed under M.G.L. c. 151B.[73]

Inaction by an employee may, under certain circumstances, give rise to individual liability under § 4(5). For liability to attach in this circumstance, the individual must:

1. have knowledge of ongoing sexual harassment;
2. have an obligation and the authority to investigate and/or take remedial action;
3. intentionally fail to take such action; and
4. contribute to the complainant's injury by failing to act.[74]

"[I]n situations where the inaction of the employee results from 'deliberate indifference,' and not mere inattention or negligence, such nonfeasance 'is not mere inaction, but a designed and willful act of forbearance in a situation where action is required.'"[75] However, if the employee has no duty to intervene to stop the harassment and is not in a position to do so, he will not be subject to liability under § 4(5).[76]

An individual may only be liable as an aider or abettor when there is evidence of a joint enterprise between more than one participant.[77] The individual must have specific knowledge of his or her supporting role in the unlawful enterprise.[78] An individual may engage in a joint enterprise with the "fictional" legal entity of the respondent corporation - which possesses all of the legal attributes of a natural person - if that individual is in a position to subject the employer to vicarious liability.[79]

V. **EMPLOYERS' SEXUAL HARASSMENT POLICIES AND COMPLAINT PROCEDURES**
   A. **Sexual Harassment Policy**

In Massachusetts, the law requires employers with six or more employees to adopt a written policy against sexual harassment.[80] The employer's policy must include notice to employees that sexual harassment in the workplace is unlawful and that it is unlawful to retaliate against an employee for filing a complaint of sexual harassment.[81] The policy should also assert the employer's commitment to investigate any complaint of sexual harassment. The Commission has prepared a Model Sexual Harassment Policy and a poster.[82]

The Commission recommends that an employer's policy include, at a minimum, all the requirements enumerated in chapter 151B and all the components of the Model Policy, as follows:

- a statement that sexual harassment in the workplace is unlawful;
- a statement that it is unlawful to retaliate against an employee for filing a complaint of sexual harassment, or for cooperating in an investigation of a complaint of sexual harassment;
- a description and examples of sexual harassment
- a statement of the potential consequences for employees who are found to have committed sexual

harassment;

- a description of the process for filing internal complaints about sexual harassment and the work addresses and telephone numbers of the person or persons to whom complaints should be made; and
- the identity of the appropriate state and federal employment discrimination enforcement agencies and instructions as to how to contact such agencies.

Employers should specifically prohibit the dissemination of sexually explicit voice mail, e-mail, graphics, downloaded material or websites in the workplace and include these prohibitions in their workplace policies. [83] An employer must present new employees with a copy of the employer's policy upon commencement of employment and provide all employees with an individual written copy of the policy on a yearly basis. [84] Employers should also post the policy in a conspicuous area in the workplace.

**B.    Sexual Harassment Training and Education**

While not a requirement, chapter 151B encourages employers to conduct education and training programs on sexual harassment for all employees on a regular basis. [85] Employers are further advised to conduct additional training [86] for supervisory and managerial employees, which should address their specific responsibilities as well as the steps that such employees should take to ensure immediate and appropriate corrective action in addressing harassment complaints. [87] This is significant because employers are vicariously liable for the conduct of those persons that they place in supervisory positions. [88]

Employers should also train employees how to recognize and report incidents of sexual harassment. In claims alleging sexual harassment, an employer's commitment to providing anti-harassment training to its workforce may be a factor in determining liability or the appropriate remedy. [89]

**C.    Sexual Harassment Complaint Procedure**

The following suggestions regarding how to draft an appropriate complaint procedure and conduct an investigation of a sexual harassment claim are advisory in nature, rather than mandatory.

**1.    Employers Should Designate Person(s) to Receive Complaints of Sexual Harassment**

In its sexual harassment policy, an employer should designate one or more individuals as the person(s) to whom employees should report any complaints of sexual harassment. The person(s) selected should be knowledgeable and sensitive to the issues. [90] These typically include managers, supervisors, human resource personnel, principals of the employer or in-house counsel. The full names of these individuals, together with their work addresses and telephone numbers, should be included in the policy provided to employees.

The employer's internal complaint procedure should also be calculated to encourage complainants to come forward by:

- designating more than one individual to receive complaints;
- designating individuals of both sexes to receive complaints;
- designating individuals of both sexes to receive complaints; [91]
- allowing complaints to be communicated orally; and
- allowing a complainant to report allegations to someone other than his or her supervisor.

It is also advisable for an employer to identify the person(s) and/or the department within the organization that will be authorized to initiate an internal investigation into a complaint of harassment. Any employee who receives a complaint of sexual harassment, or is made aware of any sexually harassing behavior, should immediately report it to the designated person(s) and/or the designated department.

Under no circumstances should an employer:

- require an employee to complain directly to the person alleged to have engaged in the sexual harassment;
- insist that filing a complaint within the company is a prerequisite to filing or pursuing a complaint of sexual harassment with the MCAD or the United States Equal Employment Opportunity Commission ("EEOC");
- instruct an employee not to file a complaint with the MCAD or EEOC; or
- instruct an employee not to cooperate with the MCAD or EEOC in an investigation.

2. **Duties of Persons Receiving Complaints of Sexual Harassment**

The individuals designated to receive complaints of sexual harassment on behalf of the employer should document the receipt of any such complaints. It is advisable for that person to maintain the records in a way that allows for the identification of repeat offenders.

Employers should instruct recipients of sexual harassment complaints to inform complainants and alleged perpetrators that they will:

- keep the complaint confidential to the extent practicable under the circumstances;
- conduct a prompt, neutral investigation into the allegations; and
- not tolerate any form of retaliation against the complainant for having complained of sexual harassment.

## VI. INVESTIGATING SEXUAL HARASSMENT COMPLAINTS

### A. Preliminary Issues

In general, the employer should always investigate a complaint of sexual harassment as soon as practicable, even if an employee asks that it not investigate his or her claim. Employers should investigate any claim involving physical violence immediately. The nature and duration of the investigation will depend on the circumstances of the complaint, including the type, severity and frequency of the alleged harassment.[92]

### B. Conducting the Investigation

Employers should investigate allegations of sexual harassment in a fair and expeditious manner, in a way that maintains confidentiality to the extent practicable. Employers should inform complainants that they have a legal duty to investigate allegations of sexual harassment, and that, while the matter will be kept as confidential as possible, it may not be possible to withhold the complainant's identity from the alleged harasser. The employer's investigation should generally include interviews of the complainant, the alleged harasser, witnesses, individuals whom any of the foregoing identify as having knowledge of potential relevance to the allegations, and anyone else whom the employer believes may have such knowledge.[93] These interviews should be conducted in a way that protects the privacy of the individuals involved to the extent practicable under the circumstances. They should also be conducted in person where possible.

The investigator should inform each interviewee, as well as any other individual apprised of the investigation, that the investigation is confidential and should not be discussed with co-workers. The investigator should further inform them that the employer will not tolerate any retaliation against the complainant or anyone else who cooperates with the investigation. The investigator should also prohibit interference with or obstruction of any investigation by the MCAD or EEOC into the allegations.

The employer's investigation should also include a review of any documents, journals, recordings, photographs, voice mails, e-mails, telephone records, or other items that may be relevant to the allegations of harassment.[94]

### C. The Investigative File

The investigator should take notes during interviews, or soon thereafter, for the purpose of maintaining accurate records. The investigator should create and maintain a confidential investigative file separate from personnel files. The file should include any materials relevant to the investigation, including but not limited to interview notes, relevant employment documents, journals, recordings, photographs, voice mails, e-mails, telephone records, or other items pertaining to the allegations or the investigation into them.

D.  **Special Issues Regarding the Investigation**
    1.  **Confidentiality**

        The employer should ensure that the investigation is kept as confidential as possible, by communicating information about the investigation only to those that need to know about it. An employer should not promise absolute confidentiality to the complainant, the alleged harasser or other witnesses, because such a promise may obstruct the employer's ability to conduct a fair and thorough investigation. Generally, the complainant and the alleged harasser should be kept informed of the status of the investigation during the process.

    2.  **Interim Measures Pending the Outcome of the Investigation**

        During the investigation, it may be necessary or advisable for the employer to take measures to separate the alleged harasser from the complainant. These measures should be carefully crafted to minimize the chance that the alleged harasser will either continue to harass the complainant or will retaliate against her. The employer must also ensure that the measures themselves do not amount to retaliation against the complainant. The employer should consider a number of factors in deciding what interim measures to take, including, but not limited to, the following:

        - the expressed wishes of the complainant;
        - the nature and extent of the allegations;
        - the personal safety of the complainant;
        - the number of complainants;
        - whether the alleged harassment is of an ongoing nature;
        - the behavior of the alleged harasser; and
        - whether the alleged harasser has an alleged or actual history of engaging in harassment.

        Consideration of these factors may lead the employer to decide that certain interim measures are necessary and/or advisable. Such measures might include, but are not limited to:

        - placing the alleged harasser on administrative leave;
        - placing the complainant on administrative leave, if the complainant so requests;
        - transferring the alleged harasser, or the complainant *if she requests*, to a different area/department or shift so that there is no further business/social contact between the complainant and the alleged harasser;
        - instructing the alleged harasser to stop the conduct; and
        - eliminating the alleged harasser's supervisory authority over the complainant.

        During the investigation, the employer has a duty to take the necessary steps to eliminate from the workplace the harassment about which the complainant has complained.[95] The fact that it may be burdensome for the employer to take such action does not diminish this duty.[96] The employer should monitor any interim measures that it takes throughout the investigation. Monitoring may include assessing whether the interim measures meet the goals of preventing ongoing harassment, protecting the safety of the parties and preventing retaliatory conduct.

E.  **Reaching a Determination**

    After the employer's investigation is complete, the investigator should prepare a final written report documenting his or her findings. Generally, the investigator's report should detail the steps the investigator took in examining the complainant's allegations and should explain any conclusions the investigator has made. The employer should inform the complainant and the alleged harasser of its findings in the matter. If the employer concludes that sexual harassment has occurred,[97] the employer must take prompt and appropriate remedial action designed to end the offending conduct and prevent future harassing conduct.[98]Regardless of the investigator's findings, the employer should make follow-up inquiries to ensure that the conduct has not resumed and that neither the complainant nor any witnesses interviewed during the investigation has suffered any retaliation.

F.  **Appropriate Remedial Action**

When an employer concludes that sexual harassment has occurred, the employer must take prompt remedial action designed to end the harassment and prevent future harassment. What constitutes appropriate remedial action depends upon the circumstances. Appropriate remedial action should reflect the nature and severity of the harassment, the existence of any prior incidents, and the effectiveness or lack thereof of any prior remedial steps.

Generally, remedial action consists of the following:

- promptly halting any ongoing harassment;
- taking prompt, appropriate disciplinary action against the harasser;
- taking effective actions to prevent the recurrence of harassment, including conducting a sexual harassment training where appropriate;[99] and
- making the complainant whole by restoring any lost employment benefits or opportunities. [100]

Whether the employer has taken prompt and appropriate remedial action in a given case depends upon many factors, including the timeliness of the actions and whether, given the circumstances, the actions were reasonably likely to stop the conduct and prevent it from recurring. The inquiry into whether the employer took appropriate action is focused primarily on whether the remedial action ultimately succeeded, taking into consideration whether, under the circumstances, the action was reasonably calculated to succeed.[101]The efficacy of the action is not measured by whether the complainant feels that justice has been achieved, but whether the behavior that gave rise to the complaint has ceased and does not threaten to recur.[102]

## VII.  STATUTE OF LIMITATIONS
### A.  Timeframe for Filing a Claim

Currently, chapter 151B, §5 requires that a charge of discrimination be filed with the Commission within six months of the alleged discriminatory act. However, the statute was amended on August 7, 2002 and, beginning November 5, 2002, the time period will be amended to 300 days. [103]

The filing requirements are to be interpreted broadly to give effect to the law's broad remedial purposes.[104]Pursuant to the Commission's Regulations at 804 CMR §1.10(2), the limitations period will not bar the filing in instances where the facts of a charge allege that the unlawful conduct was of a continuing nature (as discussed below) or "when pursuant to an employment contract, an aggrieved person enters into a grievance proceeding concerning the alleged discriminatory act(s) within six months (or 300 days depending on the applicable period) of the conduct complained of and subsequently files a complaint within six months (or 300 days) of the outcome of such proceeding(s)." The regulation further provides that the statutory requirement is not a bar where the aggrieved person enters into an agreement to mediate a dispute under M.G.L. c. 151B and files the complaint within twenty-one days after the conclusion of mediation.

In addition, the filing deadline is also subject to equitable tolling. Equitable tolling has been found to apply only in the following narrow circumstances: (1) the complainant is excusably ignorant about the statute of limitations; or (2) the respondent/employer or the Commission affirmatively misleads the complainant.[105] Generally, the time period under chapter 151B is triggered once the complainant knows or should know that he or she is being discriminated against.[106]

### B.  The Continuing Violations Doctrine

The applicable filing deadline will not prevent employees from pursuing claims when the conduct complained of is of a *continuing nature*. [107]This situation may occur if the case involves a pattern of conduct, the cumulative effect of which results in a hostile work environment over time, as opposed to a distinct job action that takes place on a specific date. This exception recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact.[108]This is because "incidents of sexual harassment serious enough to create a work environment permeated by abuse typically accumulate over time," and any one incident, viewed in isolation, may not be serious enough to constitute harassment.[109]However, viewed cumulatively, "the seemingly disparate incidents may show a prolonged and compelling pattern of mistreatment that have forced a plaintiff to work under intolerable, sexually offensive, conditions." [110]

A continuing violation may be of a serial or a systemic nature.

1. **Serial Violation**

    A "serial" continuing violation exists when: (a) at least one instance of sexually harassing conduct occurs within the limitations period; (b) the timely and untimely acts are recurrent, related to each other, and stem from a common discriminatory animus; (c) the complainant's delay in filing the charge as to the untimely events was not unreasonable.

    If a continuing violation exists, the applicable filing period does not begin to run until the occurrence of the *last* act of discrimination.[111] Under these circumstances, harassing events occurring outside the statute of limitations may be considered timely. Therefore, if the complainant is able to establish the existence of a continuing violation, she may be able to recover damages for otherwise untimely acts *in addition to* damages for the timely conduct.[112] The MCAD will find the complainant's sexual harassment claim timely if the following conditions are satisfied:

    a. **At Least One Instance of Sexually Harassing Conduct Within the Applicable Limitations Period**

        An employee must establish that at least one instance of sexually harassing conduct occurred within the applicable limitations period. The conduct within the limitations period need not, standing alone, have created a hostile work environment.[113] However, the fact that an employee may have ongoing distress within the applicable time period as a result of conduct occurring prior to that period will not suffice.[114]

    b. **The Conduct Must Be Substantially Related and Recurrent**

        In order for an employee to meet this prong, it must be shown that the timely act "substantially relates to earlier incidents of abuse, and substantially contributes to the continuation of a hostile work environment, such that the incident anchors all related incidents, thereby making the entirety of the claim for discriminatory conduct timely."[115] In other words, both the timely and untimely conduct must stem from a common discriminatory animus.[116] Factors the Commission considers are the similarity of the acts, whether certain conduct is repeated, the nature of the timely and untimely conduct, the amount of time between incidents and the time period over which the conduct is alleged to have occurred. If a substantial relationship is found, the Commission may find that the complainant's untimely allegations of sexual harassment are actionable.[117] If the timely and untimely conduct are not linked, the conduct outside the limitations period will not be actionable. For example, hateful looks, without more, may not be found to be sufficiently related to prior, untimely acts of sexual harassment.[118]

    c. **The Complainant's Delay in Filing the Charge Must Not Be Unreasonable**

        The complainant may seek damages for conduct occurring outside the limitations period, unless she "knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve, and, thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran on that conduct."[119] If the delay as to the earlier events is objectively unreasonable, she may still file a claim as to the timely events and use the untimely events as background evidence.[120]

2. **Systemic Violations**

    A systemic violation occurs when an ongoing discriminatory policy or practice of the employer exists. In order to be rendered timely, the complainant need not establish that the discriminatory act has occurred within the statute of limitations period, rather that the discriminatory policy that affected the complainant continued into the limitations period.[121]

VIII. **CONSTRUCTIVE DISCHARGE**

Constructive discharge occurs when a complainant resigns or leaves a job due to working conditions so intolerable that the law treats the resignation as a discharge. Constructive discharge is not a required *element* of a sexual harassment claim, but offers an additional basis for damages in connection with such a claim. An employee alleging sexual harassment may prove constructive discharge by showing that she left her job under circumstances where a reasonable person in her position would have felt compelled to resign.[122]

Sexual harassment that results in constructive discharge may involve both verbal and physical conduct - *e.g.*, unwanted sexual comments combined with unwelcome touching.[123] However, verbal conduct alone, such as grossly offensive language, can also cause a constructive discharge. An employee who has been subjected to sexual harassment may establish a claim of constructive discharge by demonstrating that it was unlikely that the discriminatory environment would be properly remedied within a reasonable time period. The likelihood of establishing a claim of constructive discharge increases the longer the harassment persists, particularly where the employee has complained of the harassment and no or inadequate remedial action has been taken.

Constructive discharge can occur even if the harasser does not act with the specific intent of forcing the complainant to resign from her job.[124] A claim of constructive discharge under chapter 151B does not arise, however, when the complainant resigns due to general dissatisfaction with the workplace or as a result of other conduct that does not violate chapter 151B.[125]

An employee who is subjected to sexual harassment must pursue reasonable alternatives to quitting, such as filing an internal complaint, in order to establish constructive discharge.[126] Determining whether there are reasonable alternatives to quitting is a fact-specific inquiry. For example, an employee who is sexually harassed by the president of the company may not be required to complain to a Human Resources representative subordinate to the president in order to establish constructive discharge. Moreover, if there is no human resources department or policy regarding how to address a complaint of discrimination, it may not be reasonable to expect an employee who is being harassed by his/her supervisor to file a complaint. It may, however, be reasonable to expect an employee in this situation to make clear to the offending party that the sexually harassing behavior is unwelcome and request that it stop.

As a general matter, where avenues for filing an internal complaint exist, if an employee resigns before the employer has had a reasonable opportunity to investigate and address the allegation of harassment, the resignation is less likely to be determined to be a constructive discharge. Where the complainant makes an internal complaint and the employer fails to respond adequately, constructive discharge may occur.[127] By contrast, responding to allegations of harassment in a prompt, effective, non-retaliatory manner may prevent a finding of constructive discharge.[128]

## IX.  RETALIATION

Neither an employer nor any person may retaliate against an individual who alleges sexual harassment. Chapter 151B, § 4(4) prohibits any person or employer from taking adverse action against a person "because he [or she] has opposed any practices forbidden under [chapter 151B] or because he [or she] has filed a complaint, testified or assisted in any proceeding under [chapter 151B]."[129] In order to prove retaliation, a complainant must show that: (A) she engaged in protected activity; (B) her employer knew of this protected activity and acted adversely against her; and (C) a causal nexus exists between the adverse action and the protected activity.[130]

### A.  Protected Activity

Protected activity may include, but is not limited to, such actions as:

- speaking to someone at the MCAD, EEOC or other civil rights or law enforcement agency, or to an attorney about the possibility of filing a claim of discrimination against the employer;
- filing a complaint at the MCAD or EEOC against the employer;
- filing a complaint in court;
- talking to an MCAD or EEOC investigator about another employee's charge of discrimination against the employer;
- testifying as a witness concerning a claim of harassment against the employer;
- complaining to management or filing an internal complaint of harassment;
- asking a supervisor or co-worker to stop engaging in harassing conduct;
- cooperating with an internal investigation of a sexual harassment complaint; or
- meeting with co-workers to discuss how to stop sexual harassment in the workplace.

In order to prove protected activity, a complainant must demonstrate that she "reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination and that [s]he acted reasonably in response to [her] belief."[131]A complainant need not prevail on her sexual harassment claim to prove a retaliation claim. [132]

In addition, the way in which a complainant expresses her opposition to the harassing conduct must also be reasonable. For instance, physical violence or threats of physical violence may be considered too extreme a response to be considered reasonable.[133]By contrast, conduct such as reporting an incident to a sexual harassment officer, filing a claim at the Commission, providing information in an investigation, or testifying at a proceeding is never considered unreasonable. The Commission's determination as to the reasonableness of a complainant's oppositional conduct will take into consideration the egregiousness of the alleged harassment.

### B.   Adverse Action

An employer takes adverse action under § 4(4) when it materially disadvantages the complainant with regard to any of the terms or conditions of her employment.[134] The term "adverse action" can encompass actions such as:

- termination;
- denial of promotion;[135]
- demotion in title or duties;
- transfer to a less favorable position or location;[136]
- involuntary placement on leave;[137]
- hostile or abusive workplace treatment;[138] or
- decreasing compensation or benefits.

In addition to actions that are materially disadvantageous, retaliation claims can be based upon allegations of coercion, threats, intimidation, and interference under chapter 151B, §4(4A), as discussed below.

A complainant must show that her employer knew of her protected activity when it took adverse action. The MCAD has applied a "knew or should have known" standard to impute knowledge of a complainant's protected activity to her employer.[139] Certain protected activity such as filing a complaint with the MCAD puts an employer on notice by its very nature. However, such notice would only be imputed to the employer in the presence of proof that the employer had received notice of the MCAD filing.

### C.   Causation

A complainant proves causation by showing that her participation in protected activity was "a determinative factor" in her employer's decision to act adversely against her. [140]A highly relevant factor in the causation analysis is the proximity in time between the adverse action and the protected activity. [141] The mere fact, however, that adverse action occurred after protected activity does not necessarily show causation.[142]

### D.   Coercion, Intimidation, Threats or Interference

A complainant may also bring a retaliation claim under §4(4A) of chapter 151B if she is subjected to threats, intimidation, or coercion, or her employment is otherwise interfered with because she complained of harassment or assisted or encouraged another who complained of harassment. [143]Unlike a §4(4) claim, a §4 (4A) claim does not require proof of an adverse employment action. Furthermore, both employees and non-employees can be held liable under this section. For example, an interviewer's threat not to hire an employee may violate § 4(4A), even if the interviewer does not have authority to act on the threat.[144]

### E.   Frivolous Claims

The employer has the right to take appropriate disciplinary action against an employee who makes a false or bad faith claim of sexual harassment. In addition, to the extent that any willfully false claim constitutes resistance to or interference with the work of the Commission, the person filing such a complaint may be subject to civil and/or criminal penalties. [145]

[Welcome] [Hours] [Laws] [News] [Forms] [Frequently Asked Questions] [Links] [Contacts] [Services] [Privacy Policy]

# MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

## Sexual Harassment in the Workplace Guidelines

# ENDNOTES

[1] These guidelines will not answer every question concerning application of the laws regarding sexual harassment. The Commission issues these guidelines pursuant to its statutory authority to enforce the Commonwealth's anti-discrimination laws. This Commission exists to enforce Mass. Gen. L. ch. 151B and is not bound by federal law. However, "the Federal guidelines can be used to guide Massachusetts in interpreting G.L. c. 151B." *LaBonte v. Hutchins & Wheeler*, 424 Mass. 813, 823 n.13 (1997).

**Important note**: The case cites in the footnotes to these guidelines are provided for reference purposes only and in no way limit the Commission's ability to interpret the anti-discrimination laws

[2] Mass. Gen. Laws ch. 151B §4(1), (16A) (1996).

[3] Mass. Gen. Laws ch. 272, §92A, 98A (1996).

[4] Mass. Gen. Laws ch. 151C (1996).

[5] Mass. Gen. Laws ch. 151B §4 (1996).

[6] Mass. Gen. Laws ch. 151B, §1(5) (1996) (definition of employer).

[7] Mass. Gen. Laws ch. 151B§ 1(18)(a) (1996).

[8] *See, e.g., Hinojosa v. Durkee*, 19 MDLR 14, 16 (1997); Mass. Gen. Laws ch. 151B §1(18)(a) (1996).

[9] *Meritor Sav. Bank, FSB v. Vinson*, 106 S. Ct 2399, 2406 (1986); Mass. Gen. Laws ch. 151B§1(18)(a); 42 U.S.C. §2000e *et seq.*

[10] Although these Guidelines use a female pronoun to refer to the "complainant" or the victim of sexual harassment, a victim can be of either sex, and harassment can occur between people of the same sex.

[11] *See, e.g., Richards v. Walter Fernald State School*, 2000 WL 1473024 at *3 (Mass. Super. Ct. July 31, 2000) (where the court denied summary judgment on a *quid pro quo* claim as a jury could find an encounter in which plaintiff's supervisor said he would "forget all about" the problem of plaintiff not signing a memo if she would "go out" with him amounted to *quid pro quo* sexual harassment).

[12] An employer may also be liable for *quid pro quo* sexual harassment if an employee loses an opportunity or benefit to another employee because of the other employee's submission to sexual advances or requests for sexual favors. *See* EEOC Sexual Harassment Guidelines, 29 CFR 1604.11(g).

[13] *Timko v. City of Boston,* 1994 WL 879866, at *12 (Mass. Super. Ct. Aug. 1, 1994).

[14] *Shanley v. Pub 106, Inc.,* 22 MDLR 333, 336 (2000).

[15] *Id.* at 336.

[16] *Bradbury v. The Elbow Room*, 18 MDLR 107, 108 (1996). *See also Richards*, 2000 WL 1473024, at *3 (complainant could base quid pro quo claim on supervisor's request that she "go out" with him).

[17] *Lipchitz v. Raytheon Co.*, 434 Mass. 493, 504-05 (2001); *Abramian v. President and Fellows of Harvard College*, 432 Mass. 107, 116-17 (2000).

[18] *Abramian*, 432 Mass. at 117.

[19] Pursuant to Chapter 151B, the analysis governing a hostile work environment claim applies to claims of harassment based on all Chapter 151B protected categories. For example, an employee who is subjected to derogatory or insulting comments or images referencing his or her race may have a claim for racial harassment. *Rainey v. Monsanto Co.*, 22 MDLR 303, 309-10 (2000); see also *Lazure v. Transit Express*, Inc., 22 MDLR 16, 18 (2000) ("it is appropriate to analyze a claim of ... racial harassment[] using the models established in sexual harassment cases").

[20] Mass. Gen. Laws ch. 151B §1 (18)(b) (1996).

[21] *Ramsdell v. Western Massachusetts Bus Lines Inc.* 415 Mass. 673, 678-79 (1993); *Lawless v. Northeast Battery & Alternator, Inc.*, 22 MDLR 138, 142 (2000).

[22] Massachusetts Commission Against Discrimination Model Sexual Harassment Policy 96-2. *See, e.g., Cuddyer v. The Stop & Shop Supermarket Co.*, 434 Mass. 521, 523-26 (2001); *Muzzy v. Callihane Motors, Inc.*, 434 Mass. 409, 410-11 (2001).

[23] *Melnychenko v. 84 Lumber Co.*, 424 Mass. 285, 290 (1997). A closely related cause of action not addressed in these guidelines is gender harassment. To establish liability for harassment based on gender, a complainant must establish that (1) she is a member of a protected class; (2) she was the target of speech or conduct based on her membership in that class; (3) the speech or conduct was sufficiently severe or pervasive to alter her conditions of employment and create an abusive working environment; and (4) the harassment was carried out by an employee with a supervisory relationship to complainant, or respondent knew or should have known of the harassment and failed to take prompt remedial action. *Fluet v. Harvard University*, 23 MDLR 145, 161 (2001); *Lazure v. Transit Express*, Inc., 22 MDLR 16, 18 (2000). *See also Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 441 (1st Cir. 1997) ("[m]any different forms of offensive behavior may be included within the definition of hostile environment sexual harassment") (*citing Spain v. Gallegos*, 26 F.3d 439, 447 (3d Cir. 1994)). However, the overtones of such behavior must be, at the very least, sex-based, so as to be a recognizable form of sex discrimination").

[24] *Ramsdell*, 415 Mass at 678, n.4; *see also Lawless*, 22 MDLR at 142-43 (complainant's voluntary participation to some degree in the sexual banter that permeated the workplace did not bar recovery on her sexual harassment claim as complainant used vulgar language because she needed to fit into the environment and minimize the workplace friction).

[25] *Rosati v. Town of Warren Board of Health*, 19 MDLR 34, 38 (1997).

[26] *Melnychenko*, 424 Mass. at 287-88.

[27] *Kelley v. Plymouth County Sheriff's Department*, 22 MDLR 208, 214 (2000).

[28] *Ramsdell*, 415 Mass. at 678-79.

[29] *Id.*

[30] *Kelley*, 22 MDLR at 214 (2000) (*quoting Carlton v. Worcester School Dept.*, 14 MDLR 1143, 1147 (1992)).

[31] *Ruffino v. State Street Bank and Trust Co.*, 908 F. Supp. 1019, 1036 n.28 (D. Mass. 1995).

[32] *Gnerre v. MCAD*, 402 Mass. 502, 508-09 (1988). *Compare Sweeney v. K-Mart Corp.*, 21 MDLR 79 (1999) *with Dietrich v. Swartz & Corcoran Ins. Agency, Inc.*, 22 MDLR 367 (2000).

[33] *Kelley*, 22 MDLR at 214- 15.

[34] *Id.* at 215.

[35] *Prader v. Leading Edge Products, Inc.*, 39 Mass. App. Ct. 616, 619-20 (1996).

[36] *College-Town Division of Interco, Inc., v. MCAD*, 400 Mass. 156, 162 (1987); Mass. Gen. Laws ch. 151B §1(18)(b) (1996).

[37] *Ramsdell*, 415 Mass. at 678.

[38] *McAuliffe v. Suffolk County Sheriff's Dept.*, 21 MDLR 27, 29 (1999).

[39] *Richards v. Bull HN Information Systems, Inc.*, 16 MDLR 1639, 1666 (1994).

[40] See *Smith-Pereira v. Coffees of the World*, 20 MDLR 229, 234 (1998).

[41] *Melnychenko*, 424 Mass. at 290.

[42] *See id.*, citing *Smith v. Brimfield Precision, Inc.*, 17 MDLR 1089, 1096 (1995). *See also* Mass. Gen. Laws ch. 151B, §1(18) (1996).

[43] *Melnychenko*, 424 Mass. at 290.

[44] *Johnson v. Boston Edison Co*, 19 MDLR 162, 166 (1997); *Blades v. Hahjee's Place*, 7 MDLR 1741, 1752-54 (1985).

[45] *Id.* See also *Borrelli v. Aria Technologies*, 21 MDLR 103, 105 (1999) (citing *Sanderson v. Town of Wellfleet*, 16 MDLR 1341 (1994).

[46] *Borrelli*, 21 MDLR at 105-06.

[47] *Johnson v. Boston Edison Co.*, 19 MDLR at 166-67.

[48] *College-Town*, 400 Mass. at 165-167; *Holt v. Minuteman Flames Minor Hockey Ass'n*, 22 MDLR 373, 375 (2000); *Miller v. Berkshire Hospitality Corp.*, 22 MDLR 321, 324 (2000); *Rowe v. American Paper Products, Inc.*, 22 MDLR 279, 282 (2000); *Messina v. Araserve, Inc.*, 906 F. Supp. 34, 37 (D. Mass. 1995); *LeClerc v. Interstate Distrib. Div. of Hudson News Co.*, 2000 WL 33170694 at *6 (Mass. Super. Ct. Aug. 31, 2000).

[49] *College-Town*, 400 Mass. at 165-67.

[50] *Id.*

[51] *See, e.g., LeClerc*, 2000 WL 33170694, at *6.

[52] *See, e.g., Fluet v. Harvard University*, 23 MDLR 145, 163 (2001); *Doucimo v. S & S Corp.*, 22 MDLR 82, 87 (2000); *Albee v. New England Medical Center Hosp., Inc.*, 1997 WL 691524, at *7 (Mass. Super. Ct. Oct. 30, 1997); *Lazure v. Transit Express, Inc.*, 22 MDLR 16, 19 (2000); *Levesque v. Quality Brands Liquor*, 19 MDLR 154, 156 (1997); *Przybycien v. Aid Maintenance Co.*, 13 MDLR 1267, 1281 (1991). *See also Enforcement Guidance on Vicarious Liability for Unlawful Harassment by Supervisors*, EEOC Notice No. 915.002, June 18, 1999, subsection III ("Who Qualifies as a Supervisor?") (A copy of this EEOC Guidance can be obtained at http://www.eeoc.gov/docs/harassment.html).

[53] Under Massachusetts law, apparent authority is created when "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Zortman v. Bildman*, 1999 WL 1318959, at *11 (Mass. Super. Ct. Jan. 15, 1999) *quoting Weisman v. Saetz*, 11 Mass. App. Ct. 440, 442 (1981); *see also* Restatement (Second) of Agency §§ 7, 8

(1957) ("Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.").

[54] *See, e.g., Przybycien,* 13 MDLR at 1281; *Robinson v. Haffner's Service Stations, Inc.,* 23 MDLR 283, 286-87 (2001).

[55] *Robinson,* 23 MDLR at 286- 87; *Weisman v. Saetz,* 11 Mass. App. Ct. 440, 442 (1981); Restatement (Second) of Agency § 8, comment c (1957); *Galotti v. Town of Belmont,* 6 MDLR 1669, 1687-88 (1984).

[56] *College-Town,* 400 Mass. at 165-66; *Comeau v. Idea Lube, Inc.,* 22 MDLR 5, 7 (2000); *Levesque,* 19 MDLR at 156; *Messina v. Araserve, Inc.,* 906 F. Supp. 34, 38 (1995); *Battenfield v. Harvard University,* 1993 WL 818920 at *4 (Mass. Super. Ct. Aug. 31, 1993).

[57] Actual knowledge is most commonly established by demonstrating that the employee informed a supervisory level employee of the alleged harassment. *See, e.g., Jordan v. Prime Laminating, Inc.,* 22 MDLR 151, 153 (2000).

[58] The employer may be held liable when it is on constructive notice of unlawful conduct, or when it "should have known" of the conduct. See, e.g., *Parent v. Spectro Coating Corp.,* 22 MDLR 221, 225-26 (2000). *Cf. Gilman v. Instructional Systems, Inc.,* 22 MDLR 237, 241 (the complainant failed to prove that respondent "knew or should have known" about harassment allegedly perpetrated by her co-worker because she never informed her supervisor and, the only person she did inform was another co-worker).

[59] *See, e.g., Beldo v. Univ. of Massachusetts Boston,* 20 MDLR 105, 111 (1998); Richards, 16 MDLR at 1668-69; *Parent,* 22 MDLR at 225-6; *Rounds v. Dep't. of Corrections,* 19 MDLR 90, 100 (1997); *Russell v. Hillcrest Educational Centers, Inc.,* 23 MDLR 91, 95-96 (2001).

[60] *Rodriguez-Hernandez v. Miranda- Velez,* 132 F.3d 848, 854 (1st Cir. 1998) (customer has no liability, but employer liable for discharging plaintiff after she complained of sexual harassment by customer); *Burman v. Boch Oldsmobile, Inc.,* 1995 WL 809940 at *4 (Mass. Super. Ct. Apr. 11, 1995). *See, e.g., Folkerson v. Circus Enterprises, Inc.* 107 F.3d 754, 756 (9th Cir. 1997); *Powell v. Las Vegas Hilton Corp.,* 841 F. Supp. 1024, 1028 (D. Nev. 1992).

[61] *Ligenza v. Genesis Health Ventures of Massachusetts, Inc.,* 995 F. Supp. 226, 230-31 (D. Mass. 1998).

[62] *See, e.g., Handy v. North End Community Health Center, Inc.,* 21 MDLR 37, 38 (1999).

[63] *Fiske v. R.P. Liquor, Inc.,* 16 MDLR 1042, 1049-50 (1994) (company liable for hostile work environment caused by a friend of the owner).

[64] *Handy,* 21 MDLR at 38 (Commission concluded that respondent was not liable for the conduct of a client because it had insufficient control over client and took measured and reasonable steps to alleviate the harassing conduct).

[65] *Beaupre v. Cliff Smith & Associates,* 50 Mass. App. Ct. 480, 490-91 (2000) (employer's president individually liable for both *quid pro quo* and hostile work environment sexual harassment; plain language of the statute provides on its face for individual personal liability for unlawful sexual harassment actively perpetrated by president himself); *Ruffino v. State Street Bank and Trust Co.,* 908 F. Supp. 1019, 1048 (D. Mass. 1995).

[66] *Raffurty v. Keyland Corp.,* 22 MDLR 125, 127 (2000) (president and owner of employer corporation who made such persistent verbal and physical sexual overtures to employee that she was finally compelled to quit held personally liable for hostile work environment sexual harassment; corporation also vicariously liable).

[67] *MCAD v. Medical Weight Loss Center, Inc.,* 23 MDLR 5, 12 (2001) (owner held individually liable where he coerced, intimidated, interfered with, and retaliated against the complainant in the exercise of her right to be free from harassment based on her sex and sexual orientation).

[68] *Compare Deeter v. Bravo's Pizzeria and Restaurant,* 23 MDLR 167 (2001) *with Rushford v. Bravo's Pizzeria and Restaurant,* 23 MDLR 171 (2001); *see also Doucimo v. S & S Corp.,* 22 MDLR 81, 87 (2000); *Morehouse v. Berkshire Gas*

*Co.*, 989 F. Supp. 54, 61 (D. Mass. 1997). An individual person can also be liable for acts of retaliation under § 4(4). *See Bain v. City of Springfield*, 424 Mass. 758, 765 (1997) (mayor's directive to "get rid of" plaintiff after she complained about discriminatory behavior was retaliatory and mayor could be held individually liable); *Kelley*, 22 MDLR at 217 (complainant won damage award against department and individuals for unlawful retaliation because the individuals had participated in, were aware of, or could have prevented the retaliatory conduct). This same rationale applies in the context of other prohibited forms of discrimination. *Bendell v. Lemax, Inc.*, 22 MDLR 259, 263 (2000) (company president held individually liable under ch. 151B, § 4(4A) for interfering with complainant's right to be free from unlawful discrimination when he terminated her because of her disability).

[69] *Rosati v. Town of Warren Bd. of Health*, 19 MDLR 34, 38 (1997); *Carney v. Town of Falmouth Police Department*, 16 MDLR 1444, 1455-56 (1994), *aff'd* 17 MDLR 1280 (1995) (Full Comm'n); *Morehouse*, 989 F. Supp. at 63-64.

[70] *Tunstall v. Acticell H'W Cosmetics*, 22 MDLR 284, 287-88 (2000).

[71] *Erewa v. Reis*, 20 MDLR 36, 38 (1998).

[72] See *Harmon v. Malden Hosp.*, 19 MDLR 157, 157-58 (1997), *See also Murray v. Sharp Air Freight Services, Inc.*, 2000 WL 33170935, at *4 (Mass. Super. Ct. Dec. 5, 2000); *Hope v. San Ran, Inc.*, 8 MDLR 1195, 1211, aff'd, 8 MDLR 1277 (1986). *Cf. Hennessy v. Perico, Inc.*, 1999 WL 515078 at *1 (Mass. Super. Ct. May 20, 1999).

[73] See *Murray*, 2000 WL 33170935, at *4 (*citing Harmon*).

[74] *Harmon*, 19 MDLR at 158; *Chapin v. University of Massachusetts at Lowell*, 977 F. Supp. 72, 80 (D. Mass. 1997).

[75] *LeClerc v. Interstate Distrib. Div. of Hudson News Co.*, 2000 WL 33170694 at *10 (Mass. Super. Ct. Aug. 31, 2000), *citing Chapin*, 977 F.Supp. at 77-80.

[76] *Morehouse*, 989 F. Supp. at 61-62.

[77] *See, e.g., DeBarboza v. Cablevision of Boston, Inc.*, 1999 WL 65489, at *2 (Mass. Super. Ct. Jan. 29, 1999) (although court held that corporate defendant could be held liable as an aider and abettor, it dismissed the claim because the plaintiff failed to allege the person or persons that the corporation allegedly aided or abetted).

[78] *Beaupre*, 50 Mass. App. Ct. at 495 n.23 (noting that the actor must be found to have the requisite intent to discriminate in order to be liable for aiding and abetting); *Urrea*, slip op. at 6, supra note 57; *Harmon*, 19 MDLR at 158. *Compare Russell v. Hillcrest Educational Centers, Inc.*, 23 MDLR 91, 96 (2001) (aiding and abetting claim dismissed due to lack of evidence demonstrating respondent's agents had knowledge of the harasser's conduct and intended to assist the harasser in his alleged unlawful actions).

[79] *See, e.g., Beaupre*, 50 Mass. App. Ct. at 494-95 (president and controlling shareholder of respondent company held liable as an aider and abettor for acting jointly with the respondent company in both his separate acts of sexual harassment against the complainant, which the company is deemed vicariously to have authorized him to do, and in causing the company to sanction the complainant's demotion and subsequent constructive discharge), *citing Model Penal Code and Commentaries* § 2.06(2) (c), (3)(a) and comments 5-6; § 2.07(6) (a) and comment 7 (1980) (which makes a person "legally accountable for any conduct he performs or causes to be performed in the name of the corporation or in its behalf to the same extent as if it were performed in his own name or behalf" and "makes certain that the corporate agent will not escape liability because all or part of his conduct is performed through or in the name of the corporation").

[80] Mass. Gen. Laws ch.151B §3A (1996). As defined in §1 of the statute, covered employers are those companies that employ six or more employees. *See* Mass. Gen. Laws ch. 151B, §1(5) (1996).

[81] Mass.Gen.Laws ch. 151B §3A(b) (1996).

[82] Mass. Gen. Laws ch. 151B, §3A(b)(2) & (c) (1996). A copy of the MCAD Model Sexual Harassment Policy No. 96-2 and the poster can be obtained through the MCAD. The Model Policy is accessible online at http://www.state.ma.us/mcad/harassment.html. The Commission further recommends that employers establish an anti-

harassment policy that clearly prohibits harassment based on all classes protected by the statute.

[83] Distribution of pornography may be part of the harassment. *Bowman v. Heller, aff'd in part and vacated in part by* 420 Mass. 577 (1995), 1993 WL 761159 at *7 (Mass. Super. Ct. Jul. 9, 1993), *Barbetta v. Chemlawn Services Corp.*, 669 F. Supp. 569, 572 (W.D.N.Y. 1987).

[84] Mass. Gen. Laws ch. 151B, §3A(b)(2) (1996). In addition, it is recommended that the employer post both the policy and the poster in a conspicuous area in the workplace.

[85] Mass. Gen. Laws ch. 151B, §3A(e) provides that employers are encouraged to conduct an education and training program for new employees within one year of commencement of employment. *See also* Charles Walker, *"An Ounce of Prevention...,"* MCAD Certified Discrimination Prevention Training Program, Sexual and Other Harassment Prevention Module, MCLE (2000-15-CM). In 1999, the Commission, in conjunction with the MCLE, initiated a program to train individuals to educate workforces on techniques to prevent discrimination in the workplace. A list of sexual harassment prevention trainers is available from the Commission.

[86] Mass. Gen. Laws ch. 151B, §3A(e) (1996). The training should make it clear that harassment based on the other protected categories violates Chapter 151B.

[87] *Id.* The statute provides that the additional training should be commenced within one year of employment for new managers and supervisors.

[88] *See* Section III, text at 8 - 10.

[89] *See Harley v. Costco Wholesale Corp.*, 21 MDLR 87, 93-94 (1999) (employer's failure to take prompt remedial action was supported by evidence that respondent failed to adequately train its managers and supervisors in how to respond to a complaint of discrimination or harassment, rendering them ineffective in this regard). In court cases where punitive damages may be sought, evidence of training may also mitigate damages.

[90] *See Rounds v. Dep't. of Corrections*, 19 MDLR 90, 99-100 (1997) (finding of no liability on the part of the employer which promptly assigned an "experienced special investigator" to meet with witnesses to the alleged harassing conversation).

[91] It is important to have options with respect to how the employee may report a complaint of harassment, as the complaint may involve the individual whose position it is to handle sexual harassment complaints.

[92] *Parent*, 22 MDLR at 226.

[93] *See Beldo*, 20 MDLR at 107, 112 (investigation that involved one interview between the investigating supervisor and the alleged perpetrator - both of whom were friends - and no one else, not even the complainant, held to be evidence of an inadequate investigation).

[94] *See, e.g., Johnson v. Boston Edison Co.*, 19 MDLR at 165 (investigation appropriately included review of internal company telephone records).

[95] *See, e.g., Michel v. Factory Mut. Engineering Corp.*, 1998 WL 726500, at *9 (Mass. Super. Ct. Oct. 2, 1998) (employer promptly painted over bathroom graffiti).

[96] *See, e.g., Rainey v. Monsanto Co.*, 22 MDLR 303, 310 (2000) (employer not only took photographs of offending graffiti and painted the walls, but also increased maintenance and supervisory surveillance of the restrooms, had supervisory and management meetings with all work crew to discuss incident and to re-convey management's anti-harassment policy, and followed up with diversity consultants and continued investigations, involving the entire workforce of the division).

[97] It is important to note that the employer's determination as to whether sexual harassment did or did not occur does not in any way bind the Commission to make the same finding.

[98] EEOC Policy Guidance on Sexual Harassment, N-915-050, 8 FEP Manual No. 6699, (March 19, 1990) (hereinafter, "EEOC Policy Guidance on Sexual Harassment"); *Harley*, 21 MDLR at 93.

[99] *See, e.g., Michel*, 1998 WL 726500, at *9.

[100] "EEOC Policy Guidance on Sexual Harassment."

[101] *See, e.g., Sarin v. Raytheon Co.*, 905 F. Supp. 49, 53 (D. Mass. 1995); *cf. Hoffman v. Daka, Inc.*, 2000 WL 33170817, at *4 (Mass. Super. Ct. Oct. 31, 2000).

[102] *See, e.g., Johnson v. Boston Edison Co.*, 19 MDLR at 16. See "EEOC Policy Guidance on Sexual Harassment." *See also Harley*, 21 MDLR at 93; *Barbot v. Hapco Farms, Inc.*, 19 MDLR 133, 137 (1997).

[103] On August 7, 2002, Governor Swift signed into law chapter 223 of the Acts of 2002, which amended Mass.Gen.Laws. c.151B, §5 to change the statute of limitations from six months to 300 days. The amendment goes into effect on November 5, 2002 and applies to claims arising after that date. For all claims arising before that date, the six-month limitations period still applies.

[104] *Ruffin.*, 908 F. Supp. at 1037.

[105] *See, e.g., Conroy v. Boston Edison Co.*, 758 F. Supp. 54, 60-61 (D. Mass. 1991), *Andrews v. Arkwright Mutual Insurance Co.*, 423 Mass. 1021, 1022 (1996); *Adams v. Mount St. Vincent Nursing Home*, 19 MDLR 123, 125 (1997).

[106] *Wheatley v. American Tel. & Tel. Co.*, 418 Mass. 394, 398 (1994) (*citing McConnell v. General Tel Co. of Cal.*, 814 F.2d 1311, 1317 (9th Cir. 1987); *Wynn & Wynn v. MCAD*, 431 Mass. 655, 673 (2000); *DeBiase v. MBTA*, 22 MDLR 271, 273-274 (2000); *Soriano v. City of Lawrence Police Department*, 2000 WL 1584852 at *3 (Essex Super. Ct. Oct. 23, 2000).

[107] MCAD Rules and Procedures 804 CMR 1.10(2) (2002) (emphasis added); *Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521 (2001).

[108] *Cuddyer*, 434 Mass. at 532-33.

[109] *Id.* at 532.

[110] *Id.* at 532 (citations omitted). *See also Ruffino*, 908 F. Supp. at 1038-39; *Olsen v. Lenco Industries, Inc.*, 19 MDLR 176, 181 (1997).

[111] *Mortimer v. Atlas Distr. Co.*, 15 MDLR 1233, 1250 (1993).

[112] *Carter v. Commissioner of Correction*, 43 Mass. App. Ct. 212, 220-21 (1997). *Cf Clifton v. MBTA*, 2000 WL 218397 at *6 (Feb. 3, 2000); *Beldo v. Univ. of Massachusetts at Boston*, 20 MDLR 105, 110-111 (1998); *Lynn Teachers Union, Local 1037 v. MCAD*, 406 Mass. 515, 523 (1990). In contrast, where a continuing violation is not established, the complainant is limited in using the untimely events as background evidence to establish a hostile work environment, and she may not recover damages for the time-barred events. *Cuddyer*, 434 Mass. at 530, n.10.

[113] *Cuddyer*, 434 Mass. at 532-33.

[114] *De Almeida v. The Children's Museum*, 2000 WL 96497, at *3 (Suffolk Super. Ct. Jan. 11, 2000) (A sexual harassment claim must be more than the "residual effects of past discrimination.").

[115] *Cuddyer*, 434 Mass. at 533.

[116] *Id.* at 531, n.12.

[117] *See Goguen v. Quality Plan Administrators*, 2000 WL 282485 at *3 (Mass. Super. Ct. Feb. 1, 2000).

[118] *See De Almeida,* 2000 WL 96497, at *3 (hateful looks, the only alleged conduct within the six-month period, were not found to be "substantially related" to the earlier allegations of harassment).

[119] *Cuddyer*, 434 Mass. at 539. The SJC has stated that this test is more favorable to the complainant and differs substantively from the federal "reveletory" standard. That standard provides that once a complainant knows, or reasonably should know, that she is being sexually harassed, the limitations clock begins to run. *Id.* at 537-38.

[120] *Cuddyer*, 434 Mass. at 530 n.10 (2001).

[121] *Jensen v. Frank*, 912 F.2d 517, 523 (1st Cir. 1990). *See, e.g., Lynn Teachers Union, Local 1037,* 406 Mass. at 522-523 (approving application of continuing violation rule where refusal to credit complainants for pre- resignation seniority breathed new life into discriminatory maternity leave policy).

[122] *GTE Products Corp. v. Stewart,* 421 Mass. 22, 34 (1995), *citing Alicea Rosado v. Garcia Santiago,* 562 F. 2d 114, 119 (1st Cir. 1977); *Holt at 375; Choukas v. Ocean Kai Restaurant,* 19 MDLR 169, 171 (1997); *Said v. Northeast Security*, 18 MDLR 255, 259 (1996).

[123] *See Parent*, 22 MDLR at 226 (co-worker's lewd gestures, physical and verbal threats, unwelcome touching, and phone calls combined to meet criteria for constructive discharge).

[124] *Langford v. Dep't of Employment and Training*, 17 MDLR 1043, 1063 (1995), *aff'd,* 18 MDLR 36 (1996) (Full Comm'n).

[125] *GTE Products,* 421 Mass. at 35, *citing Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 361 (1st Cir. 1993); *Smith-Somers v. Fathers and Sons Pizza, Inc.,* 19 MDLR 1, 2 (1997) *aff'd* 24 MDLR 88 (2002).

[126] *See GTE Products,* 421 Mass. at 36 (employee's obligation to act reasonably includes "an obligation not to assume the worst and not to jump to conclusions too fast") (*quoting Garner v. Wal-Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir. 1987); *Bengin v. Braintree Highlands Corp.,* 21 MDLR 197, 199 (1999); *Kletkotka v. Carlin Combustion Technology, Inc.,* 21 MDLR 72, 75 (1999); *Estate of Douglas McKinley v. Boston Harbor Hotel*, 14 MDLR 1226, 1241 (1992).

[127] *Parent*, 22 MDLR at 226 (respondent's failure to take prompt and effective action to remedy harassment led to constructive discharge).

[128] For more information about investigating claims of sexual harassment and taking effective remedial action to eliminate harassment, see Section VI of these Guidelines

[129] This provision protects both current and former employees. *Robinson v. Shell Oil Co.*, 117 S. Ct. 843, 848-49 (1997) (interpreting Title VII).

[130] *Tate v. Dep't of Mental Health,* 419 Mass. 356, 364-65 (1995); *MacCormack v. Boston Edison Co.,* 423 Mass. 652, 662-6 (1996).

[131] *Abramian*, 432 Mass. at 121.

[132] *Bain*, 424 Mass. at 765.

[133] See *Logan v. Brook Farm Egg*, No. 97-BEM-1899, 24 MDLR _____ (2002).

[134] *MacCormack,* 423 Mass. at 663.

[135] *Kealy v. City of Lowell*, 21 MDLR 19, 24 (1999).

[136] *Farricy v. Suffolk County Sheriff's Dep't,* 22 MDLR 27, 28-29 (2000) (Full Comm'n).

[137] *Pulido v. Dep't of Corrections,* 20 MDLR 49, 52 (1998).

[138] *Muise v. Credit Exchange,* 17 MDLR 1684, 1691-92 (1995). In fact, as described in Section VII(B) of these Guidelines, such retaliation can constitute a part of a continuing violation that relates back and includes otherwise untimely incidents of sexual harassment.

[139] *Monahan v. Dep't of Mental Retardation,* 14 MDLR 1049, 1053 (1991), *aff'd,* 14 MDLR 1153 (1992) (Full Comm'n). *See also Bass v. Dep't of Mental Retardation,* 20 MDLR 1, 4 (1998) (retaliation claim dismissed where employer fired complainant prior to being served with a copy of her MCAD charge and employer had no other reason to know about charge).

[140] *Tate,* 419 Mass. at 364. Causation may be inferred from proof of retaliatory intent. Complainants frequently use the three stage burden shifting model of *Blare v. Husky Injection Systems, Boston, Inc.,* to prove retaliatory intent. Under this analysis, protected activity, adverse action, and causal nexus/proximity in time are the elements of the prima facie case, followed by the rebuttal and pretext stages. 419 Mass. 437, 441-443 (1995); *see also Ruffino,* 908 F. Supp. at 1044-47. A fact finder can then infer causation from proof of retaliatory intent.

[141] *See Hurd v. Massachusetts Port Authority,* 20 MDLR 11, 19 (1998); *Cimino v. BLH Electronics, Inc.,* 5 MDLR 1286-87, 1285 (1983); *Emmons v. Codex Corp.,* 4 MDLR 1523, 1551 (1982).

[142] *See, e.g., Socarides v. Camp Edwards Troop Welfare Council, Inc.,* 21 MDLR 173, 177 (1999).

[143] *See Roy v. New England Steak House, Inc.,* 23 MDLR 299, 303-04 (2001).

[144] *Riggs v. Town of Oak Bluffs,* 23 MDLR 306, 311 (2001). See also Bain, 424 Mass. at 765 n.4; *Melnychenko* 424 Mass. at 294-295 (§ 4(4A) may extend to use of termination agreements and/or waivers which interfere with employee rights under M.G.L. ch. 151B); *Harmon,* 19 MDLR at 157 (for guidance in interpreting § 4(4A), MCAD looks to cases under Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11H).

[145] Mass. Gen. Laws ch. 151B §8 (1996).

---