UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY NEWELL,             )<br>    Plaintiff,              )<br>                              )<br>v.                            )<br>                              )<br>CELADON SECURITY SERVICES, INC., )<br>RODNEY BUTLER, KEITH GREEN;  )<br>AND ABEDEKADER KOUIDRI,   )<br>    Defendants.           ) | DOCKET NO. 04-10429- JGD |

### PLAINTIFF'S STATEMENT OF MATERIAL FACTS OF RECORD AS TO WHICH THERE EXISTS A GENUINE ISSUE TO BE TRIED

In opposition to Defendant's motion for summary judgment and pursuant to Local Rule 56.1, Plaintiff submits the following statement of material facts of record as to which there exists a genuine issue to be tried. Defendant has not set forth its Statement of Undisputed Material Facts in numbered paragraphs. Plaintiff would have responded to those numbered paragraphs as needed. Accordingly, Plaintiff sets forth her statements of material fact in the following numbered paragraphs.

1. Plaintiff was employed by Celadon as a security guard from December 2000 to May 2001. Plaintiff had no previous experience as a security guard and she received no training to speak of from Celadon. Exhibit A, Plaintiff's Affidavit, para. 3-4.

2. Plaintiff's immediate supervisor for most of her employment at Celadon was Defendant Rodney Butler. He gave Plaintiff her work assignments. However, he did not work at the sites with her. Exhibit A, Plaintiff's Affidavit, para. 5.

3.	On 5/5/01, Plaintiff was sexually assaulted at a work site by Defendant Kouidri. Kouidri was an employee of Celadon. The work site was One Kendall Square. Plaintiff worked a double shift that day. During the second shift, Plaintiff was asked by the older security guard on the site to accompany Kouidri on a tour of the building so that Plaintiff would know what to do in case Plaintiff had to work alone. During this tour, Kouidri brought Plaintiff to the basement in a poorly lit area. Kouidri grabbed her breast. Plaintiff pushed him away. He then pushed Plaintiff against the wall and kissed her. Exhibit A, Plaintiff's Affidavit, para. 6.

4.	I believed that Kouidri was a supervisor at Celadon. Kouidri wore street clothes instead of a security uniform like the security guards wore. Plaintiff had seen Kouidri once before at the same site. Kouidri wore street clothes then as well. Plaintiff's experience at Celadon was that supervisors did not wear security uniforms. Exhibit A, Plaintiff's Affidavit, para. 7.

5.	Kouidri acted like a supervisor on the earlier occasion. At that time, when Plaintiff left her desk to get a soda, Kouidri yelled at her and ordered her to return to her desk. Kouidri told Plaintiff that she was supposed to sit there and stay there. He was very pushy. He also walked around with a walkie-talkie. Plaintiff was never given a walkie-talkie by Celadon. Exhibit A, Plaintiff's Affidavit, para. 8.

6.	Plaintiff reported the sexual assault to Celadon two days later on 5/7/01. Plaintiff reported it to a supervisor of Celadon named Frank Doran. Plaintiff believes that she also reported it to her immediate supervisor Rodney Butler. Exhibit A, Plaintiff's Affidavit, para. 9.

7. On the day after Plaintiff reported the sexual assault, she was transferred to a different site, Seaport Condominium at Marina Bay in Quincy ('Marina Bay"). This site was very difficult to get to by public transportation during the day and there was no public transportation to get home at the end of the shift. Exhibit A, Plaintiff's Affidavit, para. 10.

8. It was known to Celadon that Plaintiff did not have a car and had to rely on public transportation. Rodney Butler arranged for another supervisor, Defendant Keith Green, to pick Plaintiff up at the end of the shift at Marina Bay to take her home to Dorchester. Exhibit A, Plaintiff's Affidavit, para. 10.

9. Plaintiff was told by Rodney Butler that her hours at Marina Bay were 5:00 p.m. to midnight. Plaintiff would be working alone at the site. Plaintiff worked at Marina Bay from Tuesday, 5/8/01 through Friday 5/11/05. She made her way there each day by public transportation. On each night from 5/8/01 to 5/10/01, Mr. Green picked her up, arriving at approximately 11:30 p.m. Exhibit A, Plaintiff's Affidavit, para. 11.

10. There was a telephone that Plaintiff could use at Marina Bay. However, the telephone was not working properly. By Thursday, the telephone was not working at all. Plaintiff spoke with Rodney Butler during the day on Friday, 5/11/01, and told him that the phone was not working at Marina Bay. Rodney Butler promised that he would have a phone there for her when she arrived to work that night. Exhibit A, Plaintiff's Affidavit, para. 12.

11. When Plaintiff arrived to work at Marina Bay on Friday, 5/11/01, there was no phone as promised by Rodney Butler. Plaintiff continued to work from 5:00 p.m. on. Mr. Green did not arrive to pick her up at the usual time of 11:30 p.m. She continued to wait for him until approximately 12:45 p.m., but he did not show. Plaintiff had no way to call anyone. Plaintiff was

3

stranded there and was very worried and upset.  At approximately 12:45 p.m., Plaintiff started to walk home to Dorchester. Exhibit A, Plaintiff's Affidavit, para. 13.

12.     Plaintiff's attempt to walk home alone at that late hour and in that unfamiliar area was very frightening to her.   There were motorcycles going by and dangerous looking people. Plaintiff was afraid for her safety. Plaintiff eventually made her way to a nursing home in the area. Plaintiff had no money for cab fare. Plaintiff was able to call her friend from the nursing home. Plaintiff arranged with him to take a cab to his home and for him to pay for the cab. Exhibit A, Plaintiff's Affidavit, para. 14.

13.     Celadon's transfer of Plaintiff to Marina Bay following her complaint was disadvantageous to her.  The site where Plaintiff had worked, One Kendall Square (as well as other sites where Plaintiff had worked) was accessible by public transportation.  There were other security guards working there.  There was also the opportunity to work double shifts and make more money.  At Marina Bay, it was very difficult to get there by public transportation and there was no public transportation to get home. Plaintiff had to rely on Celadon to pick her up and take her home.  Plaintiff worked alone and had no operable phone.  There were no double shifts available there for extra money.  Exhibit A, Plaintiff's Affidavit, para. 16.

14.     There was no reason that Plaintiff could see why transferring her to another site following her complaint was necessary. Plaintiff received no explanation from Celadon regarding why that was necessary. Exhibit A, Plaintiff's Affidavit, para. 17.

15.   Plaintiff was s very traumatized by these experiences at Celadon. Plaintiff suffered a severe deterioration in her mental health condition and had to be hospitalized. Exhibit A, Plaintiff's Affidavit, para. 18.

16.   A psychiatric evaluation of Plaintiff dated 5/13/05 stated that these events caused a worsening in her medical condition and an inability to maintain regular employment for approximately one year. Exhibit A, Plaintiff's Affidavit, para. 18; Exhibit B.

16.   Plaintiff's pay at Celadon (except for training sessions) was $8.50 per hour.  Exhibit C, Celadon's Ans. to Int. No. 4, p. 5.  However, Celadon has admitted that Plaintiff's pay at the Marina Bay site was $6.50 per hour.  Complaint, para. 23; Celadon's Answer, para. 23.

17.   Celadon has denied that it promised a cell phone to Plaintiff at Marina Bay.  Celadon states that Marina Bay had a phone, so it did not provide a cell phone. Exhibit C, Celadon's Ans. to Int. No. 25, p. 17.

18.   Celadon admits that it did not provide any sexual harassment training to its employees during any timeframe relevant to this litigation. Exhibit C, Celadon's Ans. to Int. No. 23, p. 16.

19.   Celadon claims that it attempted to investigate Plaintiff's sexual harassment complaint by trying to schedule an interview with her on the day of or the day following her complaint. Celadon claims that Rodney Butler contacted Plaintiff and arranged for a meeting the next day, but Plaintiff did not show up.  Celadon claims that Rodney Butler called and paged Plaintiff at least three times to inquire why she did not appear, but Plaintiff never returned his calls. Exhibit C, Celadon's Ans. to Int. No. 20, p. 14-15; Exhibit D, Celadon's MCAD Position Statement at 5.

20.     Celadon claims that following Plaintiff's report of the sexual assault, it planned to discuss the incident with Kouidri. However, Kouidri was on vacation at the time. Celadon thus planned to discuss it with him upon his return from vacation. Celadon claims, however, that instead of returning from vacation, Kouidri simply picked up his last paycheck and resigned. Therefore, Celadon claims it never had the opportunity to confer with Kouidri about the incident. Exhibit C, Celadon's Ans. to Int. No. 20, p. 15; Exhibit D, Celadon's MCAD Position Statement at 6.

21.     Despite Celadon's claim that Kouidri was on vacation following Plaintiff's 5/7/01 report of sexual harassment, Kouidri appears to be on Celadon's work schedule for 5/10/01 and 5/11/01. Exhibit J to Defendant's Memorandum, Bates stamp no. C360.

22.     Despite Celadon's claim that Kouidri was on vacation following Plaintiff's 5/7/01 report of sexual harassment, Celadon's Vice President claimed his 7/20/01 Affidavit that Kouidri had "removed himself from the work schedule" prior to the incident report by Plaintiff. Exhibit E, Affidavit of Steven Zuchowski, para. 7.

23.     Despite Celadon's claim that it never had the opportunity to interview Kouidri concerning the incident, Celadon had Kouidri sign a separation form on 5/21/01 indicating that he was resigning. Exhibit F, Kouidri Separation Form dated 5/21/01, Bates stamp no. C127.

24.     Despite Celadon's claim that it did not provide Plaintiff with a cell phone on 5/11/01 because Marina Bay had a phone, Celadon's own phone log for 5/12/01 shows a telephone call from the property manager of Marina Bay apologizing for the fact that the phone was broken. Exhibit G, Celadon Phone Log for 5/12/01, Bates stamp no. C369.

25.   Contrary to Celadon claims that it tried to investigate Plaintiff's sexual harassment complaint by trying to schedule an interview with her, Plaintiff was never contacted for an interview. Plaintiff was never told what happened as a result of her complaint.  The only words spoken to Plaintiff by Celadon concerning the sexual assault was a statement by Rodney Butler telling her not to mention it to the people at Marina Bay.  Exhibit A, Plaintiff's Affidavit, para. 3.

26.   While Celadon now admits that Plaintiff and Kouidri worked together at One Kendall Square on the date of the incident (5/5/01), Defendant's Memorandum at 2, Celadon made a different claim before the MCAD.  Celadon then claimed that the **only** day that Plaintiff and Kouidri worked together at that site was Sunday, 4/29/01. Exhibit D, Celadon's MCAD Position Statement at 5.

        Respectfully Submitted,

        MARY NEWELL,

        By her attorney,

        /s/ Richard A. Mulhearn_____
        Richard A. Mulhearn
        BBO #: 359680
        Law Office of Richard A. Mulhearn, P.C.
        41 Elm Street
        Worcester, MA 01609
        Tel:  (508) 753-9999

Dated: July 14, 2005.